IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JACKIE M., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Civil Action No.  ADC-21-838 |
| | * | |
| KILOLO KIJAKAZI, | * | |
| Acting Commissioner, | * | |
| Social Security Administration | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

On April 2, 2021, Jackie M. ("Plaintiff" or "Claimant") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). ECF No. 1. Plaintiff and Defendant filed cross-motions for summary judgment (ECF Nos. 15, 19) on December 14, 2021 and April 11, 2022, respectively.[1] Plaintiff further responded in opposition to Defendant's Motion on May 2, 2022. ECF No. 15. After considering the parties' motions, the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2021). For the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 15) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 19) is DENIED, the SSA's decision is REVERSED, and the case is REMANDED to the SSA for further analysis in accordance with this Opinion.

---

[1] On May 31, 2022, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302. *See* ECF No. 5.

### PROCEDURAL HISTORY

On November 19, 2012, Plaintiff filed a Title II application for DIB, alleging disability since July 23, 2011. ECF No. 12-3 at 20. His claim was denied initially on March 18, 2013 and upon reconsideration on January 31, 2014. *Id.* He then requested a hearing, which was held on September 9, 2015. *Id.* Plaintiff was found not disabled on September 17, 2015. *Id.* at 30. However, on appeal, this Court subsequently remanded the case. ECF No. 12-9 at 847. Plaintiff then had a second hearing on July 25, 2018 and was found not disabled on October 16, 2018. *Id.* at 847, 861. This Court again subsequently remanded the case on appeal. ECF No. 12-15 at 1232. Plaintiff then had his third hearing before an Administrative Law Judge ("ALJ") on November 24, 2020. *Id.* On January 29, 2021, the ALJ issued a decision that Plaintiff was not disabled under the Act. *Id.* at 1246. Thus, the ALJ's decision became the final decision of the SSA. *See* 20 C.F.R. § 404.981; *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). On April 2, 2021, Plaintiff then filed the Complaint in this Court seeking judicial review of the SSA's denial of his disability application. ECF No. 1.

### STANDARD OF REVIEW

This Court may review the SSA's denial of benefits under 42 U.S.C. § 405(g). *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court's review of an SSA decision is deferential: "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). *See Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."). The issue before the reviewing Court is whether the ALJ's finding of nondisability is supported by substantial evidence and based upon current legal standards. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a

mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citations omitted). In a substantial evidence review, the Court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citations omitted). Therefore, in conducting the "substantial evidence" inquiry, the Court must determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

<u>**DISABILITY DETERMINATIONS AND BURDEN OF PROOF**</u>

In order to be eligible for DIB, a claimant must establish that he is under disability within the meaning of the Act. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant shall be determined to be under disability where "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step sequential evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. § 404.1520. *See Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). "If at any step a finding of disability or nondisability can be made, the SSA will

3

not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). *See* 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments]" that is either expected to result in death or to last for a continuous twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled. At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is considered disabled, regardless of the claimant's age, education, and work experience. *See Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). Claimant's RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529(a). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ

4

must then evaluate the extent to which the symptoms limit the claimant's capacity to work. *Id.* § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including the claimant's medical history, objective medical evidence, and statements by the claimant. *Id.* § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. *See generally* SSR 96-7p, 1996 WL 374186 (July 2, 1996). To assess credibility, the ALJ should consider the claimant's daily activities, treatments he has received for his symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *3. However, the ALJ may not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate them." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (quoting SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016) (citations omitted)). Requiring objective medical evidence to support a claimant's subjective evidence of pain "improperly increase[s] [a claimant's] burden of proof." *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017).

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled. Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. The claimant has the burden of proof during steps one through four of the evaluation. *See* 20 C.F.R. § 404.1520; *Radford*, 734 F.3d at 291. However, at step five, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC, and (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See Hancock*, 667 F.3d at 472–73. If the claimant can perform other work that

5

exists in significant numbers in the national economy, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1), 404.1560(c). If the claimant cannot perform other work, he is disabled.

## THE ALJ'S DETERMINATION

The ALJ here performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity from July 23, 2011—the amended alleged onset date, through March 31, 2014—his date last insured. ECF No. 12-15 at 1235. At step two, the ALJ found that Plaintiff had severe impairments of obesity, right ankle and foot disorder status-post surgical repair, degenerative arthritis of the spine, and major depressive disorder. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 1234–35. The ALJ then determined that Plaintiff had the RFC:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant could occasionally push and pull with the right lower extremity. The claimant could perform occasional stooping, kneeling, balancing, and climbing of ramps and stairs but never climbing ladders, ropes or scaffolds and never crawling or crouching. The claimant could tolerate occasional exposure to extreme cold, vibration, wetness, and loud and very loud noise (as defined in Dictionary of Occupational Titles). The claimant had to avoid all exposure to hazards of operating dangerous vehicles and machinery and working around unprotected heights. The claimant was able to carry out detailed but uninvolved instructions to perform simple, routine, and repetitive tasks on a regular and sustained basis to complete a normal workday and week. The claimant could not tolerate fast-paced tasks such as assembly line jobs involving production quotas. The claimant was limited to job tasks requiring only occasional decision-making and having only occasional changes in the work setting.

*Id.* at 1237–38. At step four, the ALJ found that Plaintiff was unable to perform past relevant work. *Id.* at 1244. Finally, at step five, the ALJ concluded that "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," considering his age, education, work experience, and RFC. *Id.* at 1245. Thus, the ALJ concluded that Plaintiff was not disabled under the Act. *Id.* at 1246.

## DISCUSSION

Plaintiff raises three arguments on appeal: (1) that the ALJ's step-five determination is unsupported by substantial evidence; (2) that the ALJ erred at the third step by failing to evaluate properly whether Plaintiff's impairments met or equaled the requirements of Listings 1.02 and 1.03; and (3) the ALJ erred at step five by failing to identify and resolve whether Plaintiff's age category presented a borderline situation that warranted additional consideration. ECF No. 15-2 at 8–28. I find Plaintiff's second argument compelling and address the merits of this argument below.

Plaintiff is entitled to a conclusive presumption that he is disabled within the meaning of the Act where he can show that his condition "meets or equals the listed impairments" in 20 C.F.R. pt. 404, subpt. P, app. 1. *Bowen v. City of New York*, 476 U.S. 467, 471 (1986). *See McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir. 1979) (stating that the listings, if met, are "conclusive on the issue of disability"). "[A]n ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F.Supp.2d 384, 390 (D.Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). Therefore, the duty to identify relevant impairments according to listing criteria "is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D.Md. 1999). Plaintiff bears the burden of proof to show he meets all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Because "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citations omitted). "If the

7

reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Id.* at 295 (citations omitted). *See Fox v. Colvin*, 632 F.App'x. 750, 755–56 (4th Cir. 2015) (holding that the ALJ's conclusory and perfunctory step three analysis necessitated remand). Remand is warranted where the evidence in the record clearly demonstrates an issue related to a particular listing but the ALJ fails to explain the medical evidence she used to support her decision, unless there is "an equivalent discussion of the medical evidence relevant to the Step Three analysis" elsewhere in her opinion. *Schoofield v. Barnhart*, 220 F.Supp.2d 512, 522 (D.Md. 2002). *See Keene v. Berryhill*, 732 F.App'x 174, 177 (4th Cir. 2018) ("[C]ourts have determined that an ALJ's step-three conclusion that the claimant did not meet the listing at issue can be upheld based on the ALJ's findings at subsequent steps in the analysis."); *Smith v. Astrue*, 457 F.App'x 326, 328 (4th Cir. 2011) (finding that substantial evidence supported the ALJ's step three finding based on the ALJ's decision as a whole, despite the ALJ's explanation being "cursory").

Plaintiff argues that the ALJ failed to properly evaluate whether his impairments met or equaled the requirements of Listing 1.02A and 1.03 because she failed to consider whether he could ambulate effectively. ECF No. 15-2 at 21. Listing 1.02 refers to major dysfunction of a joint. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02. Among other things, it requires either "[i]nvolvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), *resulting in inability to ambulate effectively*," or "[i]nvolvement of one major peripheral joint in each upper extremity . . . resulting in inability to perform fine and gross movements effectively." *Id.* (emphasis added). Similarly, Listing 1.03 refers to reconstructive surgery or surgical arthrodesis of a major weight-bearing joint" and is defined by the "inability to ambulate effectively . . . , and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." *Id.* § 1.03.

Importantly, the inability to ambulate effectively refers to "an extreme limitation of the ability to walk." *Id.* § 1.00. In order to ambulate effectively, Plaintiff "must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." *Id.* Further:

> "[E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, *two crutches or two canes*, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail."

*Id.* (emphasis added).

Plaintiff directs the Court to multiple medical records detailing his use of crutches in order to ambulate. ECF No. 15-2 at 21–22. These records show Plaintiff using crutches repeatedly for over a 12 month period. *Id.* Specifically, he identifies treatment records showing that Plaintiff used crutches as an assistive device to ambulate (ECF No. 12-8 at 332, 670, 681, 706, 718), including when his pain was high and usually by the end of the day (ECF No. 12-8 at 804, 409), and that Plaintiff's provider instructed him to continue using crutches (ECF No. 12-8 at 673). Defendant, however, contends that the ALJ cited to evidence supporting Plaintiff's ability to ambulate effectively, including a notation that he was "[c]urrently walking daily," radiology images, and a note that he was "ambulating in crocs." ECF No. 19-1 at 8. It further directs the Court to the ALJ's later RFC discussion that Plaintiff was ambulating without assistance and that he was weight-bearing in a regular shoe. *Id.* at 9 (citing ECF No. 12-15 at 1240–41). The issue, according to Defendant, is not "whether the ALJ made a finding that Plaintiff never used crutches," but rather "whether the high standard of 'inability to ambulate' defined in the relevant Listings was met." *Id.*

I find Plaintiff's argument compelling. The ALJ's analysis of Listings 1.02 and 1.03 merely restated the criteria, asserting that Plaintiff's impairments did not "result[] in an inability to

9

ambulate effectively." ECF No. 12-15 at 1236. The ALJ's RFC determination further asserted that Plaintiff was weightbearing in a regular shoe and no longer using his CAM walker after he underwent surgery and that, at another time, he was ambulating in crocs. *Id.* at 1240–41 (citing ECF No. 12-8 at 635, 669). While these records detail ambulation without use of crutches, there are multiple, additional records that detail Plaintiff's repeated use of crutches to ambulate that the ALJ did not address. Moreover, Plaintiff detailed his regular use of crutches at his hearing on November 24, 2020 (notably, years after his surgery). Plaintiff explained that he was still using his crutches and cane. *See* ECF No. 12-14 at 1268 ("Still using my crutches and a cane though. If I'm on my feet too long during the day, I'm on crutches."). When prompted for further detail of what would cause his need for the crutches, Plaintiff explained that he would need them after a half-hour in the grocery store without an electric cart. *Id.* at 1272.

The ALJ thus failed to address repeated evidence in the record, spanning years, that Plaintiff used crutches to ambulate. This is significant because the inability to walk without crutches is an example of ineffective ambulation. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00. Even if the ALJ properly considered the evidence in the record and concluded that Plaintiff's use of crutches did not satisfy the Listing requirements, she provided no such explanation in her decision. Reviewing such evidence is a "necessary predicate" to a substantial evidence review by this Court. *See Radford*, 734 F.3d at 295. As such, the Court is unable to determine whether the ALJ's decision is supported by substantial evidence, and remand is warranted. *See id.* In remanding, I express no opinion as to whether Plaintiff is disabled under the meaning of the Act.

Because I remand on this ground, I do not consider Plaintiff's additional arguments. On remand, the ALJ may consider these arguments and make any required adjustments to the opinion. *See Tanner v. Comm'r of Soc. Sec.*, 602 F.App'x 95, 98 n.* (4th Cir. 2015) (per curiam) (citing

HALLEX I-2-8-18 (May 26, 2017)) (explaining that, when the Court remands, the Appeals Council vacates the entire prior decision and the ALJ considers all pertinent issues *de novo*).

**CONCLUSION**

The Court thus concludes that the ALJ failed to provide substantial evidence to support the finding that Plaintiff was "not disabled" within the meaning of the Act. Therefore, based on the foregoing and pursuant to 42 U.S.C. § 405(g), Plaintiff's Motion for Summary Judgment (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 19) are DENIED. The decision of the SSA is REVERSED due to inadequate analysis, and this case is REMANDED for further proceedings in accordance with this Opinion.

Date: 9 June 2022

A.  David Copperthite
United States Magistrate Judge